TRONDERRICA JAMES
TRAVIS JAMES
Plaintiffs, Pro Se
7225 MOONRAKER AVE #109
LAS VEGAS, NV 89178
318-759-9557

UNITED STATES DISTRICT COURT CENTRAL
**DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

TRONDERRICA JAMES, an individual;
TRAVIS JAMES, an individual,
**Plaintiffs**, v.
SILVIA SHASHA ZHANG;
GUOJUN XUAN;
MARK SURROGACY INVESTMENT LLC;
FUTURE SPRING SURROGACY LLC;
**Defendants.**

**Case No.: 2:25-cv-09450-FLA-KS**

**PLAINTIFFS' OPPOSITION TO DEFENDANTS SILVIA SHASHA ZHANG AND GUOJUN XUAN'S MOTION TO DISMISS COMPLAINT PURSUANT TO RULE12(b)(5) AND RULE 12(b)(6)**

**Hearing Date: June 5, 2026**
**Time: 1:30 p.m.**

**Courtroom: 6B Judge: Hon. Fernando L. Aenlle-Rocha**

## I. INTRODUCTION

Defendants Silvia Shasha Zhang and Guojun Xuan's Motion to Dismiss rests on a false factual premise, mischaracterizes Plaintiffs' claims, ignores material contract language, and asks for the harshest possible result even though any alleged pleading defect can be cured by amendment.

First, Defendants repeatedly assert that this Court granted Plaintiffs alternative service on December 4, 2025. That assertion is false. No valid order granting alternative service exists in this case. The docket occurrence on which Defendants rely was stricken, corrected, or otherwise removed from the operative record and did not authorize alternative service on these Defendants. Defendants nevertheless continue to repeat that false premise while refusing to accept service through counsel, appearing specially, and using service as both sword and shield.

Plaintiffs do not seek a generic extension of time. Plaintiffs request that the Court deny dismissal and authorize alternative service by appropriate means, including service through defense counsel, email, mail, or any other method the Court deems reasonably calculated to provide notice.

Second, Defendants' Rule 12(b)(5) argument ignores Plaintiffs' diligence. Plaintiffs have attempted service, documented non-service, sought court permission for alternative methods, and pursued available procedural remedies. Defendants cannot refuse service, continue litigating through counsel, and then ask this Court to dismiss the case because service has been difficult.

Third, Defendants misstate Plaintiffs' fraud and concealment theory. Plaintiffs do not allege merely that an "agency" existed. Plaintiffs allege that Defendants concealed their ownership, control, and/or operational relationship with the agency-side entities while presenting the arrangement as involving a separate agency structure. The contract itself reinforced that

separation by stating that the Agency was not a party to the contract. Disclosure that an "agency" existed did not disclose that the Intended Parents allegedly stood behind, controlled, or operated the agency structure.

Fourth, Defendant Zhang and Defendant Xuan ignore that Plaintiff Travis James was not a stranger to the transaction. He was a Plaintiff, a signing party to the surrogacy contract, and a direct participant in the events giving rise to this action. He suffered contractual, financial, family, and emotional harms, including witnessing the traumatic medical and post-birth events involving his wife and family.

Finally, even if the Court determines that additional detail is required, dismissal with prejudice is not warranted. Defendants themselves request, in the alternative, that the Court order amendment within thirty days. Their own requested fallback relief confirms that amendment is not necessarily futile.

Plaintiffs respectfully request that the Motion be denied. In the alternative, Plaintiffs request authorization to complete service by alternative means and leave to amend under Federal Rule of Civil Procedure 15(a)(2).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Tronderrica James and Travis James filed this action arising from a gestational surrogacy arrangement involving Defendants Silvia Shasha Zhang and Guojun Xuan, as well as Mark Surrogacy Investment LLC and Future Spring Surrogacy LLC.

Plaintiffs allege that Defendants misrepresented and concealed material facts concerning the structure, control, and operation of the surrogacy arrangement. Plaintiffs further allege that Defendants used agency-side communications, personnel, and contractual structures to create the appearance of separation and neutrality while concealing their true ownership, control, and/or operational relationship with the agency-side entities.

The contract expressly distinguished the Agency from the parties. The contract stated that the Agency was not a party to the contract. That language matters. Plaintiffs understood the Agency to be separate from the Intended Parents.

Defendants' alleged undisclosed control or ownership of the agency-side structure was therefore material to Plaintiffs' consent, trust, performance, communications, payment administration, hospital access, and post-birth events.

Plaintiff Travis James was also a signing party to the contract. He was not a bystander. He participated in the surrogacy arrangement, relied on the contractual structure, and suffered direct harm from Defendants' alleged conduct. Defendants' assertion that the pleading contains "no facts" explaining why Travis James may recover ignores his status as a contracting party and direct participant.

Plaintiffs have also diligently pursued service. Defendants repeatedly claim that Plaintiffs were granted alternative service on December 4, 2025. That is not true. The docket occurrence Defendants reference was stricken, corrected, or otherwise removed and did not constitute a valid order granting alternative service in this case. Plaintiffs have not received a valid order authorizing alternative service on Defendants Zhang and Xuan. Plaintiffs have instead attempted service, documented service difficulties, and sought court approval for alternative service.

Meanwhile, defense counsel has appeared specially for Zhang and Xuan, engaged in meet-and-confer communications, filed this Motion, and refused to accept service. Defendants now attempt to exploit the very service issue their counsel has refused to resolve.

## III. LEGAL STANDARD

A. Rule 12(b)(5)

Rule 12(b)(5) permits a defendant to challenge insufficient service of process. However, Rule 4(m) does not require automatic dismissal with prejudice. If service is not made within the prescribed period, the Court may dismiss without prejudice or order that service be made

within a specified time. If the plaintiff shows good cause, the Court must extend the time for service.

Dismissal is not appropriate where a plaintiff has acted diligently, where service can still be completed by a method reasonably calculated to give notice, where defendants have actual notice, and where defendants would suffer no prejudice from allowing service to be completed. Courts have discretion to fashion appropriate relief short of dismissal, including authorizing a method of service that will accomplish notice.

**B. Rule 12(b)(6)**

To survive Rule 12(b)(6), a complaint must plead enough factual matter, accepted as true, to state a claim that is plausible on its face. At this stage, the Court accepts well-pleaded factual allegations as true and draws reasonable inferences in Plaintiffs' favor. A pro se pleading is also construed liberally.

**C. Rule 9(b)**

Fraud-based claims must plead the circumstances of fraud with particularity. However, Rule 9(b) does not require Plaintiffs to prove their case at the pleading stage. It requires enough specificity to put Defendants on notice of the alleged misconduct. Knowledge, intent, and other conditions of mind may be alleged generally.

**D. Rule 15(a)(2)**

Rule 15(a)(2) provides that a party may amend with the opposing party's written consent or the Court's leave, and that leave should be freely given when justice requires. If the Court finds any deficiency, Plaintiffs respectfully request leave to amend because the alleged defects can be cured with additional facts.

## IV. ARGUMENT

### A. DEFENDANTS' RULE 12(b)(5) ARGUMENT RELIES ON A FALSE PREMISE

Defendants' argument that Plaintiffs were granted alternative service on December 4, 2025 is demonstrably false and misrepresents the procedural history of this case. **(SEE EXHIBIT H)**

Plaintiffs filed a Motion for Alternative Service on November 10, 2025. That motion was taken under submission by the Court on December 4, 2025, without oral argument. **(SEE EXHIBIT I)** On that same date, the docket reflects an Order to Show Cause. **(SEE EXHIBIT J)** However, that entry was later identified by the Court as a clerical error. Specifically, the Order to Show Cause referenced an incorrect case number associated with a different action. On December 9, 2025, the Court issued a Notice of Clerical Error confirming that the entry was erroneous and striking it from the record because it pertained to a different case entirely. **(SEE EXHIBIT K)** Accordingly, there was no valid order entered on December 4, 2025 granting alternative service in this case, as falsely claimed by defense counsel. Further confirming this, on February 3, 2026, the Court issued an order striking Plaintiffs' Motion for Alternative Service as duplicative and denying it without prejudice as moot. That ruling did not grant alternative service. Rather, it left Plaintiffs without any authorized method of alternative service and required Plaintiffs to continue pursuing service through appropriate means or seek further relief. **(See Exhibit L)**

At no point has this Court issued a valid order authorizing alternative service on Defendants Zhang and Xuan.

Defendants' repeated assertion that alternative service was granted is therefore not merely incorrect—it is contradicted by the Court's own docket and orders. Defendants' argument improperly relies on a stricken clerical error and ignores the Court's subsequent clarification and ruling.

Defendants should not be permitted to misrepresent the procedural history of this case by relying on a stricken clerical error to suggest that alternative service was granted. The Court's record is clear, and Defendants' contrary characterization improperly distorts the facts.

Because no alternative service order was ever granted, Defendants' claim that Plaintiffs failed to comply with such an order is baseless. Plaintiffs cannot be faulted for failing to execute an order that does not exist.

This mischaracterization is particularly concerning given that Defendants simultaneously refuse to accept service while actively litigating this case. Defendants should not be permitted to rely on an inaccurate procedural narrative to seek dismissal.

The proper remedy is not dismissal, but authorization of alternative service based on Plaintiffs' documented diligence and Defendants' demonstrated evasion.

**B. DEFENDANTS HAVE REFUSED TO ACCEPT SERVICE**

On March 11, 2026 the process server attempted to service Guojun Xuan and Silvia Zhang at 612 W Camino Real Ave. Despite observing an elderly Chinese man in his 70s coming out of the front door and opening the door to a black Mercedes suv, service was not completed. The process server yelled that he had something for Zhang or Xuan, the male subject walked closer, within 15 feet of the process server, and turned around and threw his hands in the air while walking away. **(SEE EXHIBIT A, A1)**

Defendants have been selectively using service issues as a litigation weapon, so it is clear that Defendants Zhang and Xuan are not unaware of this case. Their counsel has attempted special appearances, met and conferred with Plaintiffs, and filed this Motion. Yet counsel has refused to accept service on their behalf.

Defendants repeatedly accuse Plaintiffs of wasting judicial resources. The record shows the opposite. During meet-and-confer communications on April 6, 2026, Plaintiffs expressly asked defense counsel to accept service in order to avoid unnecessary motion practice and conserve judicial resources. Counsel declined, stating that although he represents Zhang and Xuan, he is not authorized to accept service on their behalf.

Defendants cannot refuse a straightforward path to efficient service, force motion practice, and then accuse Plaintiffs of inefficiency. Any expenditure of judicial resources is the direct result of Defendants' refusal to cooperate in service while continuing to litigate the case.

Despite refusing service, Defendants now argue that the case should be dismissed because service has not been completed.

This is not equitable. It constitutes procedural gamesmanship.

Defendants cannot have it both ways. They cannot refuse to accept service through counsel, appear specially to litigate the merits, and simultaneously accuse Plaintiffs of failing to comply with an alternative-service order that does not exist.

Defendants' conduct is further underscored by their participation in separate litigation in which they appear as plaintiffs, including a case filed in the Circuit Court of Chesapeake, Virginia (Case No. CL25007296-00). In that matter, Defendants have invoked the judicial system to pursue their own claims, demonstrating their familiarity with service requirements and litigation procedures. **(SEE EXHIBIT L)**

Their willingness to rely on the courts when acting as plaintiffs, while evading service and resisting participation here, highlights the inequity of their position.

Defendants' position depends on a stricken or corrected docket occurrence, not a valid order of this Court. Because Defendants have actual notice and ordinary service has been obstructed or impracticable, the proper remedy is authorization of alternative service, not dismissal. Plaintiffs have acted diligently. Plaintiffs have pursued ordinary service, documented non-service, attempted to identify valid addresses, and requested court approval for alternative service. The Court should deny dismissal under Rule 12(b)(5). At minimum, the Court should authorize alternative service by appropriate means.

This is not a case of failed service, it is a case of avoided service.

## C. THE PROPER REMEDY IS ALTERNATIVE SERVICE, NOT DISMISSAL

Defendants' Rule 12(b)(5) request should be denied. Plaintiffs have not ignored service. Plaintiffs have attempted service, documented service difficulties, sought court assistance, and continued pursuing service while Defendants' counsel refuses to accept service.

Plaintiffs do not request a bare extension of time. Plaintiffs request authorization to serve Defendants Zhang and Xuan by alternative means because ordinary service has proven impracticable and Defendants have actual notice of this action.

Plaintiffs' service difficulties are not speculative. Photographic evidence confirms that Defendants' residence is a gated property with no accessible entry point, intercom, or means of direct contact, effectively preventing traditional service. **(SEE EXHIBIT B)**

Additionally, Plaintiffs' investigation revealed that Defendant Future Spring Surrogacy LLC is associated with a commercial suite that appears vacant. Witness statements indicate that the suite has been unoccupied for over two years—predating the entity's July 11, 2024 business filing and continuing through its May 15, 2025 status period. **(SEE EXHIBIT C, C1)**

These facts demonstrate that traditional service methods are not merely inconvenient—they are impracticable. Defendants' physical inaccessibility and use of non-operational business addresses further support the need for alternative service.

Defendants' own conduct confirms that alternative service is appropriate. Counsel for Zhang and Xuan has appeared specially, engaged in multiple meet-and-confer communications, filed the pending Motion, and actively litigated the merits of Plaintiffs' claims. At the same time, counsel refuses to accept service and Defendants falsely claim that Plaintiffs were already granted alternative service. Defendants also accuse Plaintiffs of wasting judicial resources.

Defendants' assertion that Plaintiffs have wasted judicial resources is contradicted by the record. During meet-and-confer communications on April 6, 2026, Plaintiffs expressly requested that defense counsel accept service on behalf of Defendants Zhang and Xuan in order to avoid unnecessary motion practice and conserve judicial resources. Defense counsel responded on April 6, 2026 that, although he represents Zhang and Xuan, he is not authorized to accept service on their behalf. **(SEE EXHIBIT D, D1)**

That refusal is critical. Acceptance of service would have immediately resolved the issue and eliminated the need for further motion practice. Instead, Defendants declined a straightforward and efficient solution, forcing Plaintiffs to continue pursuing service through alternative means and seek Court intervention.

Defendants now attempt to shift responsibility by accusing Plaintiffs of inefficiency. That position is not supported by the record. Plaintiffs attempted to streamline the case and avoid

burdening the Court. Defendants, by contrast, declined to cooperate while continuing to litigate through counsel.

Defendants' conduct has, in fact, increased the expenditure of judicial resources. They have required motion practice on service issues they had the ability to resolve, while simultaneously advancing arguments based on an inaccurate procedural narrative—namely, that alternative service had already been granted.

Defendants cannot refuse reasonable efforts to minimize litigation burdens, compel Plaintiffs to seek judicial relief, and then accuse Plaintiffs of wasting judicial resources.

This is precisely why alternative service is warranted. Defendants should not be permitted to avoid ordinary service, refuse service through counsel, participate in the case, and then seek dismissal based on the service problem they refuse to help resolve.

Accordingly, if the Court finds service incomplete, Plaintiffs respectfully request that the Court deny dismissal and authorize alternative service by appropriate means, including service through defense counsel, email, mail, or any other method reasonably calculated to provide actual notice.

The record reflects not inefficiency by Plaintiffs, but obstruction by Defendants.

**D. DEFENDANTS MISCHARACTERIZE PLAINTIFFS' FRAUD THEORY**

Defendants argue that Plaintiffs cannot claim concealment because Plaintiffs knew an agency existed. That argument misstates the claim. Plaintiffs do not allege merely that an agency existed. Plaintiffs allege that Defendants concealed their ownership, control, and/or operational relationship with the agency-side entities while presenting the arrangement as involving a separate agency structure.

There is a major difference between knowing that an "agency" exists and knowing that the Intended Parents allegedly owned, controlled, operated, or stood behind that agency-side structure. Disclosure of the first does not disclose the second.

Defendants' Motion answers a weaker claim Plaintiffs are not making. Plaintiffs' claim is not that the word "agency" was hidden. Plaintiffs' claim is that Defendants concealed their dual role, control, and/or self-interested relationship with the agency-side entities, while Plaintiffs were led to believe the Agency was separate from the Intended Parents.

Defendants' counsel previously attempted to minimize this matter during initial correspondence by characterizing it as a "simple contract dispute" being improperly elevated into a fraud claim. That framing is inconsistent with the allegations and the record.

At minimum, Defendants implicitly acknowledge that their clients violated the contract. Yet Defendants simultaneously attempt to limit recovery by suggesting that Plaintiff Travis James lacks a basis for damages. That position is untenable. Travis James is a signatory to the contract and a direct participant in the transaction. A contracting party has the right to recover for breach, regardless of whether he physically carried the pregnancy. Defense should not callously attempt to minimize the significance of Plaintiff Travis James' role, when his signature was required alongside the surrogates' signature to move the contract forward. As such, he is also entitled to damages.

**E. THE CONTRACT'S "AGENCY IS NOT A PARTY" LANGUAGE SUPPORTS PLAINTIFFS' REASONABLE RELIANCE**

The contract expressly stated that the Agency was not a party to the contract and was acting as an agent between the intended parents and the surrogate and surrogates husband. That provision reinforced the separation between the contracting parties and the Agency. Plaintiffs were entitled to understand the Agency as separate from the Intended Parents. **(SEE EXHIBIT F, F1)**

Defendants now argue that because an agency was mentioned, Plaintiffs could not have been misled. But the contract did not say the Intended Parents owned, controlled, operated, or stood behind the agency-side entities. It said the Agency was not a party. That language supports Plaintiffs' understanding that the Agency was separate. **(SEE EXHIBIT F, F1)**

The concealed fact was not the mere existence of an agency. The concealed fact was

Defendants' alleged relationship to, control over, or ownership of the agency-side structure. That fact was material. It affected the integrity of the transaction, Plaintiffs' trust in the arrangement, payment administration, communications, hospital and post-birth conduct, and Plaintiffs' consent to proceed under the contractual structure presented.

## F. DEFENDANTS' PARTIAL DISCLOSURES CREATED A DUTY NOT TO MISLEAD

Defendants argue they had no duty to disclose. But a duty to disclose may arise where a party makes partial representations that are misleading without additional facts, where a party has exclusive knowledge of material facts not known to the other party, or where a party actively conceals material facts.

Here, Defendants allegedly allowed Plaintiffs to proceed under a contractual and operational structure that presented the Agency as separate from the Intended Parents. Defendants allegedly used agency-side representatives, communications, and payment structures while concealing their own relationship to that structure.

Once Defendants made partial disclosures about the agency structure and participated in communications presenting the Agency as separate, they had a duty not to omit material facts that made the arrangement misleading.

Plaintiffs' Fraud-Based Claims Are Plausible and, if necessary, can be pleaded with additional particularity

## G. DEFENDANTS ARGUE IMPROPER GROUP PLEADING

Defendants argue that Plaintiffs engaged in improper group pleading. Plaintiffs disagree. The operative pleading identifies Defendants Zhang and Xuan as Intended Parents and alleges their roles in the contract, agency structure, communications, and post-birth events.

To the extent the Court finds that additional detail is needed, Plaintiffs can amend to plead the facts with greater specificity, including the specific contract provisions signed by Zhang and

Xuan, the contract language stating the Agency was not a party, the representations and warranties provision, the material breach provision regarding misrepresentations, the First Amendment/escrow language showing payment administration through Law Offices of Lei, APC, communications where Zhang referred to "my agent," communications involving agency-side representatives such as Jasmine Hernandez and Andrea Cid, corporate records showing Zhang's and/or Xuan's relationship to Mark Surrogacy Investment LLC and Future Spring Surrogacy LLC, the timing of Plaintiffs' discovery of Future Spring and the alleged corporate relationships, and how the concealed dual role affected Plaintiffs' consent, trust, performance, hospital access, and damages.

These facts are not futile. They directly address Defendants' Rule 9(b) arguments.

## H. PLAINTIFFS STATE A PLAUSIBLE BREACH OF CONTRACT CLAIM

Defendants argue that Plaintiffs fail to identify a breached contractual provision. Plaintiffs disagree. The contract included provisions regarding the parties' representations, warranties, obligations, and material breach. Plaintiffs allege that Defendants breached the agreement by making misrepresentations and omissions that were material to the agreement, including omissions concerning the true relationship between the Intended Parents and the agency-side structure. **(SEE EXHIBIT G)**

Defendants also ignore that the contract expressly separated the Agency from the parties. If Defendants allegedly controlled, owned, operated, or stood behind the agency-side entities while allowing Plaintiffs to believe the Agency was separate, that directly implicates the contractual structure.

The breach was not a trivial misstatement like Defendants' examples about height or favorite food. The alleged concealment went to the heart of the surrogacy arrangement: who controlled the agency structure, who administered communications and payments, whether Plaintiffs were dealing with a separate agency or a self-interested structure controlled by the Intended Parents, and whether Plaintiffs could trust the contractual arrangement. That is material.

## I. DEFENDANTS' "BEEF VERSUS CHICKEN" ANALOGY IS IMPROPER AND MINIMIZES THE ALLEGED MISCONDUCT

Defendants compare Plaintiffs' allegations to trivial misrepresentations about food or minor personal details. That analogy is improper and minimizes the seriousness of the allegations.
This case involves a surrogacy contract, a pregnancy, medical risk, birth, hospital access, newborn-related events, escrow/payment administration, agency communications, and alleged concealed control over the very structure Plaintiffs were asked to trust.
A concealed ownership or control relationship in this context is not trivial. It goes to consent, trust, performance, and the integrity of the transaction.

## J. PLAINTIFF TRAVIS JAMES HAS STANDING AND RECOVERABLE DAMAGES

Defendants argue that "none of the facts indicate why Travis James should be allowed to recover" because Tronderrica James was the surrogate carrier. That argument ignores the facts and the contract.
Travis James was a signing party to the surrogacy contract. He was a named Plaintiff. He was a direct participant in the arrangement. He relied on the contractual structure and suffered direct harm from the alleged breach, fraud, and post-birth conduct. **(SEE EXHIBIT F)**
Contract standing does not depend on whether Travis physically carried the pregnancy. He was a contracting party. If the contract was breached and he suffered damages, he may pursue recovery. **(SEE EXHIBIT G)**
Additionally, Travis suffered direct emotional and family harms. He witnessed his wife's medical trauma, lived through the post-birth events, and continues to suffer the emotional consequences of Defendants' alleged conduct. Defendants' attempt to erase his role is improper. To the extent the Court finds that the pleading should include additional facts about Travis James's damages, Plaintiffs can amend to plead those facts in detail.

**K. PLAINTIFFS' IIED CLAIM IS NOT MERELY A CONTRACT DISPUTE**

Defendants attempt to reduce this case to a simple contract dispute. It is not. Plaintiffs allege intentional deception and concealment in the context of a surrogacy arrangement involving pregnancy, birth, medical risk, hospital access, newborn-related events, and family trauma. Conduct that might be ordinary in a commercial dispute can become extreme and outrageous when it occurs in a uniquely vulnerable medical, reproductive, and family context.

Plaintiffs allege that Defendants' conduct caused severe emotional distress, including distress to both Tronderrica James, Travis James, and their minor child. Travis witnessed the trauma involving his wife and family. Tronderrica experienced extreme medical and emotional trauma. Plaintiffs' distress was not speculative, minor, or abstract.

At the pleading stage, the Court should not dismiss the IIED claim with prejudice. If the Court finds more detail is required, Plaintiffs request leave to amend.

**L. PUNITIVE DAMAGES SHOULD NOT BE STRICKEN AT THE PLEADING STAGE**

Defendants ask the Court to strike punitive damages. That request is premature.

Plaintiffs allege intentional fraud, concealment, and conduct undertaken with knowledge of the material facts being withheld. Fraud-based allegations may support punitive damages where malice, oppression, or fraud is sufficiently alleged.

Defendants also challenge the amount of punitive damages. But the amount of punitive damages is not determined at the pleading stage. If the Court believes a specific dollar amount should not appear in the pleading, the proper remedy would be to strike or disregard the amount, not dismiss the underlying claims or eliminate punitive damages entirely.

**M. DISMISSAL WITH PREJUDICE IS NOT WARRANTED**

Defendants ask for dismissal with prejudice while also requesting, in the alternative, that the Court order amendment within thirty days. Their own requested alternative relief undercuts their futility argument.

If amendment were truly futile, Defendants would not request an order requiring amendment. Their fallback position confirms that amendment remains available.

Plaintiffs can cure any alleged deficiencies by adding additional facts concerning the corrected service history, the absence of any valid alternative-service order, Defendants' refusal to accept service through counsel, Plaintiffs' service diligence, Travis James's contractual status and damages, the specific contract provisions breached, the contract's "Agency is not a party" language, Defendants' alleged concealed ownership/control of agency-side entities, specific communications by date, speaker, and content, corporate records tying Defendants to Mark Surrogacy Investment LLC and Future Spring Surrogacy LLC, and the hospital and post-birth facts supporting damages and IIED.

Because Plaintiffs can cure any alleged pleading defects, dismissal with prejudice would be improper.

## V. REQUEST FOR LEAVE TO AMEND IN THE ALTERNATIVE

Plaintiffs maintain that the operative complaint states viable claims. However, if the Court finds any deficiency, Plaintiffs respectfully request leave to amend under Rule 15(a)(2).

Plaintiffs can amend to plead additional facts with greater specificity, including facts regarding the service history, Defendants' refusal to accept service, the contract provisions at issue, Travis James's status as a contracting party, the agency-separation language, the concealed ownership/control allegations, and Plaintiffs' damages.

Leave to amend would not prejudice Defendants. Defendants have actual notice of the claims and have already appeared specially to challenge them. Amendment would promote resolution on the merits.

## VI. REQUEST FOR CONSIDERATION OF SLIGHTLY LATE FILING

Plaintiffs respectfully request that the Court consider this Opposition notwithstanding any minor delay in filing. Plaintiffs are proceeding pro se and were temporarily traveling internationally while simultaneously managing ongoing litigation matters related to service and Defendants' pending Motion to Dismiss. The delay was brief, non-prejudicial, and not made in bad faith. Plaintiffs acted diligently upon returning and promptly prepared and filed this Opposition. Given the strong preference for resolving matters on the merits, as well as the unusual procedural posture of this case involving disputed service and Defendants' special appearance, Plaintiffs respectfully request that the Court consider the instant Opposition in full.

## VII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants Silvia Shasha Zhang and Guojun Xuan's Motion to Dismiss.

Plaintiffs further request that the Court:

1. Deny dismissal under Rule 12(b)(5);
2. Find that Defendants' Motion relies on the false premise that alternative service was granted on December 4, 2025;
3. Authorize Plaintiffs to serve Defendants Zhang and Xuan by alternative means, including service through defense counsel, email, mail, or any other method the Court deems reasonably calculated to provide notice;
4. Deny dismissal under Rule 12(b)(6);
5. Reject Defendants' request for dismissal with prejudice;
6. Reject Defendants' premature request to strike punitive damages;
7. In the alternative, grant Plaintiffs leave to amend under Rule 15(a)(2) if the Court finds additional factual detail is required; and
8. Grant such other and further relief as the Court deems just and proper.

DATED: May 18, 2026

Respectfully submitted,

TRONDERRICA JAMES
Plaintiff, Pro Se

TRAVIS JAMES
Plaintiff, Pro Se