Farzad Seyfnia, SBN: 292227
**SEYFNIA & PRYBYLO, LLP**
131 W. Green St., Suite B
Pasadena, California 91105
Telephone: 213.770.4529
Facsimile: 213.260.2284
fseyfnia@splawllp.com

Attorneys for Defendants Silvia Shasha Zhang and Guojun Xuan

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

TRONDERRICA JAMES, an individual; and TRAVIS JAMES, an individual,

Plaintiffs,

v.

SILVIA SHASHA ZHANG, an individual; GUOJUN XUAN, an individual; MARK SURROGACY INVESTMENT LLC; and FUTURE SPRING SURROGACY LLC,

Defendants.

Case No.: 2:25-cv-09450-FLA-KS

**DEFENDANTS SILVIA SHASHA ZHANG AND GUOJUN XUAN'S NOTICE OF MOTION AND MOTION TO DISMISS PORTIONS OF THE SECOND AMENDED COMPLAINT (FED. R. CIV. P. 12(b)(6)); MEMORANDUM OF POINTS AND AUTHORITIES**

Date: October 30, 2026
Time: 1:30 p.m.
Courtroom: 6B
Judge: Hon. Fernando L. Aenlle-Rocha

[*Filed concurrently with the Declaration of Silvia Shasha Zhang; Request to Consider Contract Incorporated by Reference; Declaration of Counsel re Local Rule 7-3; [Proposed] Order*]

Action Filed: October 3, 2025
SAC Filed: September 1, 2026
Trial Date: November 2, 2027

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFFS TRONDERRICA JAMES AND TRAVIS JAMES, APPEARING PRO SE:**

**PLEASE TAKE NOTICE** that on October 30, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 6B of the United States District Court for the Central District of California, First Street Courthouse, 350 West First Street, Los Angeles, California 90012, before the Honorable Fernando L. Aenlle-Rocha, Defendants Silvia Shasha Zhang and Guojun Xuan (collectively, "Defendants") will and hereby do move, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing the portions of Plaintiffs' Second Amended Complaint (Dkt. 87) ("SAC") identified below for failure to state a claim upon which relief can be granted.

Specifically, Defendants move to dismiss: (1) the First Cause of Action (fraud / intentional misrepresentation), the Second Cause of Action (fraudulent concealment), the Third Cause of Action (negligent misrepresentation), the Sixth Cause of Action (intentional infliction of emotional distress), and the Seventh Cause of Action (civil conspiracy / concerted action), in each case as to Defendant Guojun Xuan; and (2) the Fifth Cause of Action (breach of the implied covenant of good faith and fair dealing) as to both Defendants. Except for the Fifth Cause of Action, Defendants seek no relief by this Motion as to Defendant Zhang, and they will answer the remaining claims asserted against her.

On September 9, 2026, defense counsel and Plaintiffs conducted the conference required by Local Rule 7-3, which addressed each ground raised in this Motion as directed to the Second Amended Complaint. The parties were unable to resolve the matters raised. A declaration setting out the conference and the parties' positions is filed concurrently.

This Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the pleadings and records on file, the

concurrently filed Declaration of Silvia Shasha Zhang (submitted solely to authenticate the Gestational Surrogacy Contract offered for the Court's consideration under the incorporation-by-reference doctrine) and that Contract, the concurrently filed Request to Consider Contract Incorporated by Reference, the concurrently filed declaration of counsel under Local Rule 7-3, and such further argument as may properly be presented.

Dated: September 22, 2026 **SEYFNIA & PRYBYLO, LLP**

By: */s/ Farzad Seyfnia*
Farzad Seyfnia
Attorneys for Defendants Silvia Shasha Zhang and Guojun Xuan

# TABLE OF CONTENTS


**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES ....................................1

I. INTRODUCTION ....................................1

II. RELEVANT ALLEGATIONS AND THE INCORPORATED CONTRACT ....................................2

III. LEGAL STANDARD ....................................4

IV. ARGUMENT ....................................5

A. The Fraud and Concealment Claims Fail as to Xuan (First and Second Causes of Action) ....................................5

B. The Negligent-Misrepresentation Claim Fails as to Xuan (Third Cause of Action) ....................................10

C. The Implied-Covenant Claim Is Superfluous (Fifth Cause of Action) ....................................11

D. The Emotional-Distress Claim Fails as to Xuan (Sixth Cause of Action) ....................................14

E. The Civil-Conspiracy Claim Fails as to Xuan (Seventh Cause of Action) ....................................15

V. LEAVE TO AMEND ....................................16

VI. CONCLUSION ....................................17

CERTIFICATE OF COMPLIANCE ....................................19

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A.C. Shaw Constr., Inc. v. Washoe Cnty.*, 105 Nev. 913, 784 P.2d 9 (1989)13

*Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226 (2007)....10, 11

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994)15, 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....4

*Bulbman, Inc. v. Nev. Bell*, 108 Nev. 105, 825 P.2d 588 (1992) ....10

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371 (1990)11

*Chang v. Chen*, 80 F.3d 1293 (9th Cir. 1996)....17

*Christensen v. Superior Court*, 54 Cal. 3d 868 (1991) ....14

*Consol. Generator-Nev., Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 971 P.2d 1251 (1998)....15

*Doctors' Co. v. Superior Court*, 49 Cal. 3d 39 (1989)....16

*Doe v. United States*, 58 F.3d 494 (9th Cir. 1995)....16

*Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 970 P.2d 98 (1998)....10, 16

*Erickson v. Pardus*, 551 U.S. 89 (2007)....4

*Estelle v. Gamble*, 429 U.S. 97 (1976)....4

*Foman v. Davis*, 371 U.S. 178 (1962)....17

*GES, Inc. v. Corbitt*, 117 Nev. 265, 21 P.3d 11 (2001)....10

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317 (2000) ....11, 12

*Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437 (M.D. Fla. 1998)..5

*Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010) ....4

*Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 808 P.2d 919 (1991)....13

*Hughes v. Pair*, 46 Cal. 4th 1035 (2009) ....14

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) .........4, 7

*Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571 (1995) ........15, 16

*King v. Atiyeh*, 814 F.2d 565 (9th Cir. 1987) ................................................4

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ...........................5

*Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) (en banc) .................4

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc) .......................16, 17

*McMahon v. Craig*, 176 Cal. App. 4th 1502 (2009) ....................................14

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) .16

*Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459 (1992) .................5, 13

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) (en banc) .............17

*Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965 (1993) .....................14

*Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1 (2024) .....................................8

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) (per curiam).............5, 7

*United States ex rel. Lee v. Corinthian Colls., Inc.*, 655 F.3d 984 (9th Cir. 2011) .............................................................................................5

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ..................................4

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ...........4, 5, 10

**Statutes and Rules**

Cal. Civ. Code § 3294 .....................................................................5

Fed. R. Civ. P. 9(b)........................................................................ passim

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' Second Amended Complaint ("SAC," Dkt. 87) grew from four causes of action to seven and from thirteen pages to more than one hundred. (*See* Dkt. 27 at 9-12.) The added length does not cure the defects in the added claims, and this Motion is deliberately narrow. Except for the implied-covenant claim, Defendants do not ask the Court to dismiss any claim against Silvia Shasha Zhang, and Defendants will answer those claims. The Motion is directed at two things the SAC does not adequately plead: the tort and conspiracy claims against Guojun Xuan, against whom the pleading identifies no misrepresentation of his own, no concealed fact about the agency within his knowledge, no outrageous act, and no agreement he joined; and the implied-covenant claim against both Defendants, which repeats the breach-of-contract claim and adds nothing to it.

The problem is not merely that Xuan did not speak. The SAC attributes the representations it identifies to Zhang and to agency personnel, and it states that even Zhang's February 7, 2024 statement is "attribute[d] . . . to Silvia Shasha Zhang, not to Guojun Xuan as a direct speaker." (SAC ¶¶ 1205-1207.) Xuan did sign the Contract, and the parties warranted there, "to the best of their knowledge," that "all oral or written statements made to any professional, entity or party related to this Contract are true, correct, and complete" and that they "did not and will not purposely falsify or omit any major information" (§ II.5). But that mutual warranty does not itself represent that the agency was independent of the Intended Parents in ownership, affiliation, or operational control, which is the misleading structure the SAC says induced Plaintiffs (¶¶ 1204-1210), and the SAC neither ties Xuan to a particular false statement to that effect nor, taking its agency and ratification allegations as true, identifies a specific major fact about the agency that he knew and purposely omitted. The concealment, emotional-distress, and conspiracy claims fail against Xuan for related reasons. The SAC pleads his "participation in

material decisions" (¶ 1251), his roles in businesses of his own, and his business ties to Zhang and to Leijun Tang (¶¶ 125-128, 392-396, 1129, 1209, 1215). It does not plead a concrete relationship between Xuan and Mark Surrogacy that he knew of and hid, any outrageous act he directed at either Plaintiff, or any agreement he joined, and it concedes that the relationship between Mark Surrogacy and the separately documented Mark Surrogacy-named entities "is not established by the public records presently available" to Plaintiffs (¶ 147).

The implied-covenant claim (Fifth) adds nothing to the breach claim. Its nondisclosure and hospital-contact theories repeat conduct the breach count already pleads as breaches of the Contract's express terms, and its remaining pregnancy-communication theory identifies no benefit the Contract actually promised; it should be dismissed as to both Defendants. Each of these deficiencies is addressed under California law, the law the SAC invokes, with Nevada authority noted where it is in accord.

## II. RELEVANT ALLEGATIONS AND THE INCORPORATED CONTRACT

The SAC arises from a gestational-surrogacy arrangement between Plaintiffs (the surrogate, Tronderrica James, and her husband, Travis James) and Defendants Zhang and Xuan, the Intended Parents, facilitated by an agency, Mark Surrogacy LLC. (SAC ¶¶ 1204-1208.) Plaintiffs allege that the Intended Parents were more closely connected to the agency than was disclosed, that pregnancy-era communications were inadequate, that a later-formed entity, Future Spring Surrogacy, used Plaintiffs' pregnancy information, and that the surrogate's post-birth contact with the child at the hospital was restricted. (SAC ¶¶ 1204-1254.) The pleading states seven causes of action. (¶¶ 1204-1273.)

The SAC's allegations about Xuan's own role in the surrogacy are those of a participating Intended Parent. It alleges that he signed the April 2024 escrow amendment and joined in selecting the escrow holder (¶¶ 117-118), that Zhang's

references to “my husband” were to him and that he received pregnancy information (¶¶ 119-122), and that he communicated with the agency’s personnel through a Mandarin translator and appeared eager for updates (¶¶ 123-124, 387). Alleging that the same personnel presented to Tronderrica James as independent agency representatives were communicating directly with Xuan and translating for him, the SAC alleges that Xuan “knew, or at minimum participated in, the operational structure through which Mark Surrogacy LLC personnel acted between the Intended Parents and Plaintiffs.” (¶ 388.) Separately, it alleges, from public records Plaintiffs obtained later, that Xuan held formal roles in a number of businesses associated with a Valley Boulevard commercial complex in El Monte, including YUDAO Management, where Zhang later held officer positions, and Heavenly Way Investment LLC; that he had business relationships with Leijun Tang, who later appears in records of Future Spring Surrogacy; and that he “necessarily knew of his own business relationships.” (¶¶ 124-126, 391-396, 1129.) The SAC states, however, that it does not allege that those businesses alone establish liability (¶ 127), that the public records concerning a Mark Surrogacy-named entity, standing alone, establish Xuan’s ownership or control of the agency (¶ 147), or, from the records alone, that Xuan owned Future Spring (¶¶ 161, 405, 1039). Apart from the written Contract, which both Intended Parents signed (¶ 1208), the SAC does not allege that Xuan made any of the representations it challenges: it attributes the others to Zhang and to agency personnel Hernandez and Cid (¶¶ 1205-1207), and it states that Zhang’s February 7, 2024 statement is “attribute[d] . . . to Silvia Shasha Zhang, not to Guojun Xuan as a direct speaker,” while alleging that the statement conveyed a compensation decision made jointly by Zhang and Xuan (¶ 1207). Its other Xuan-specific allegations include that the Contract named him the Intended Father (¶ 1208), that later-obtained records show “business relationships between Silvia Shasha Zhang and Guojun Xuan” (¶ 1215; *see* ¶ 1209), and that he “participat[ed] in material decisions” (¶ 1251), which

describes participation as a party to the arrangement, not pleaded knowledge of or participation in the alleged deception.

The Gestational Surrogacy Contract is incorporated by reference: the SAC quotes and relies on it throughout. (E.g., ¶¶ 744-746, 1208, 1231-1237.) The Court may consider the Contract's terms in deciding this Motion. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (a defendant may offer, and the court may consider, a document the complaint refers to extensively or that forms the basis of a claim). Incorporation is not, however, a license to resolve disputed facts against the pleading: the Court may take the document for what it says, not to decide contested questions, such as whether the agency was in fact independently owned, against Plaintiffs. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002-03, 1014 (9th Cir. 2018).

## III. LEGAL STANDARD

To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," and legal conclusions couched as factual allegations are not entitled to the assumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A claim that sounds in fraud must also satisfy Rule 9(b), which requires the plaintiff to state the circumstances of the fraud (the who, what, when, where, and how) with particularity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-06 (9th Cir. 2003). Because Plaintiffs proceed pro se, the SAC is "to be liberally construed," and it is held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Pro se litigants nonetheless "must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in part on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

**Choice of law.** The sufficiency of each claim is measured under federal pleading standards, but the elements are supplied by state substantive law. Sitting in diversity, this Court applies California's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The SAC invokes California law and pleads California's governmental-interest test and California Civil Code § 3294. (¶¶ 1264-1270.) The Contract, for its part, selects Nevada law, providing that it "shall be governed, interpreted and executed in accordance with Nevada law," while acknowledging that choice of law "is a complex area of law" that a court may ultimately resolve. (§ XLII.1.) The Court need not decide which State's law governs on this Motion. Defendants analyze each claim principally under California law, the law the SAC invokes, and identify Nevada authority in accord where it bears on the analysis, most directly on the contract-based implied-covenant claim (Part IV.C), where the Contract's Nevada selection may control and California would ordinarily enforce it. *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-66 (1992). Where a defect is one of pleading particularity under Rule 9(b), as with the fraud-based claims against Xuan, it does not turn on which State supplies the substantive elements, because Rule 9(b) governs fraud-based claims in federal court whatever their source. *Vess*, 317 F.3d at 1103.

## IV. ARGUMENT

### A. The Fraud and Concealment Claims Fail as to Xuan (First and Second Causes of Action).

Rule 9(b) does not allow a complaint to lump multiple defendants together; it requires the plaintiff to "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (per curiam) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)); *United States ex rel. Lee v. Corinthian Colls., Inc.*, 655 F.3d 984, 997-98 (9th Cir. 2011). Rule 9(b) does not demand that every defendant be alleged to have made a false statement, *Swartz*,

476 F.3d at 764, but it does require the complaint to identify each defendant's role in the alleged scheme. Measured against that standard, the fraud and concealment claims do not state a claim against Xuan.

**Intentional misrepresentation (First).** The SAC identifies the representations on which it relies and attributes them to particular speakers: Zhang, communicating through the "Lin Hui" account (including her October 2023 reference to an "independent surrogate mother" and her February 7, 2024 statement about speaking with "the agency"), and the agency personnel Hernandez and Cid. (¶¶ 1205-1207.) None of those statements is attributed to Xuan; the SAC says that even Zhang's February 7 statement is "attribute[d] . . . to Silvia Shasha Zhang, not to Guojun Xuan as a direct speaker." (¶ 1207.) The SAC adds that the statement conveyed that the compensation decision had been made jointly by Zhang and Xuan (*id.*), but Xuan's part in a decision about compensation is not a representation by him about the agency's independence. Xuan did sign the Contract, and the Contract is among the writings the SAC says conveyed a misleading picture (¶ 1208); the parties also warranted, "to the best of their knowledge," that "all oral or written statements made to any professional, entity or party related to this Contract are true, correct, and complete" and that they "did not and will not purposely falsify or omit any major information" (§ II.5), a warranty whose violation the Contract treats as a material breach (§ XXIV.5). But confronting those writings sharpens the gap rather than filling it. The pleaded theory is that Plaintiffs were misled about the structure of the arrangement: the ownership, affiliations, and operational control behind the parties and the agency. (¶¶ 1204-1210.) The Contract identifies the agency ("Mark Surrogacy"), states that it "is acting as an agent between the Intended Parents and the Surrogate and Surrogate's Husband," and states that the "Agency is not a Party to this Contract" (§ I.1; *see* SAC ¶ 1208); describing the agency's role between the parties, and its status as a nonparty, does not assert that no undisclosed affiliation or shared

control existed, and the references to "the agency" and to "IP" are Zhang's and the agency personnel's, not Xuan's. The § II.5 warranty does not supply such an assertion either: it is a general promise about statements "made to any professional, entity or party related to this Contract," whose examples are the "disclosures contained in any written applications and medical questionnaires used in this matter" (§ II.5), not a representation by Xuan about the agency's ownership or independence. Nor can the Contract be read the other way, to establish that the agency in fact had no undisclosed affiliations, because on a motion to dismiss the document is taken for what it says, not to resolve that disputed fact against Plaintiffs. *Khoja*, 899 F.3d at 1014. The defect is precise: the SAC identifies neither a particular false representation about the relevant relationship made by Xuan, nor facts sufficient to identify his role in making, authorizing, adopting, ratifying, or agreeing to another speaker's alleged misrepresentation. *Swartz*, 476 F.3d at 764-65 (the plaintiff must, at a minimum, identify each defendant's role in the alleged fraudulent scheme). Rule 9(b) requires that identification.

**Attribution through the agency.** The SAC's agency allegations do not close the gap. It alleges that agency personnel acted in an "authorized intermediary role," grounding that role in the Contract's description of the agency and in the "recruitment, negotiation, screening, payment, pregnancy, and hospital-coordination functions" the personnel performed (¶ 1256; *see* ¶ 1206), and that Defendants ratified conduct performed on their behalf, but expressly "only where the evidence shows" a defendant "knew of material conduct performed on that [defendant's] behalf and accepted, adopted, benefited from, or failed to repudiate" it (¶ 1257). A principal can, in some circumstances, answer for an authorized agent's misrepresentation. But taken as true, these allegations still do not plead facts showing that authority to recruit, negotiate, and coordinate included authority to describe the agency's own ownership or affiliations on Xuan's behalf, or that Xuan authorized, knew of, adopted, or ratified any particular false statement about

the agency's ownership, affiliation, or control, and Rule 9(b) requires the plaintiff to identify the statement and the facts connecting the principal to it. A conditional, evidence-dependent assertion that ratification may be shown is not that pleading. Nor does the allegation that Xuan "knew, or at minimum participated in, the operational structure through which Mark Surrogacy LLC personnel acted" (¶ 388) fill the gap: knowing that the agency acted between the parties, as the Contract itself said it would (§ I.1), is not knowing that any statement about the agency's independence was false. The SAC's own attribution rule is consistent with that reading: it assigns each statement to its identified speaker (¶ 1255), it preserves "the direct attribution of the speakers' own statements" whatever "[t]he precise legal scope" of their authority (¶ 1256), and it never attributes a false statement of ownership, affiliation, or control to Xuan, or alleges facts showing he directed or adopted one.

**Fraudulent concealment (Second).** The concealment count as to Xuan is not empty in the way the misrepresentation count is. The SAC pleads facts specific to him: formal roles in YUDAO Management and Heavenly Way Investment LLC, business overlap with Zhang, and a relationship with Leijun Tang, who appears in records associated with Future Spring (¶¶ 125-128, 392-396, 1209, 1215). It alleges that Xuan "necessarily knew of his own business relationships with Leijun Tang and the entities in which he personally held formal roles" (¶ 1129; *see* ¶ 419), and it pleads a duty-to-disclose theory: direct transactional dealings with Plaintiffs, facts said to be within Defendants' exclusive knowledge, and partial representations rendered misleading by nondisclosure (¶¶ 1216-1219). California does recognize a disclosure duty on those grounds in a qualifying transactional relationship. *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 40-41 (2024). The defect is therefore not the absence of a pleaded duty category; it is the absence of the particular facts Rule 9(b) requires to show that Xuan owed and breached such a duty. Apart from a general reference to "material relationships between the

Intended Parents and the surrogacy businesses," the concealed facts ¶ 1215 lists that concern Xuan specifically are his business relationships with Zhang and his relationships with Leijun Tang, which the SAC alleges "materially undermined the independence represented to" Plaintiffs (¶ 1209). Knowing one's own business relationships is not, without more, knowing a concealed fact about the agency's independence, and the SAC pleads no facts tying either relationship to Mark Surrogacy LLC itself, the agency named in the Contract. The SAC does not allege that Xuan held any position in Mark Surrogacy LLC or in the Mark Surrogacy-named entity in which it places Zhang (¶¶ 101, 147, 1209). The SAC also alleges that Heavenly Way, before Xuan's documented role in it, was organized at an Arcadia address that state filings also associate with the Mark Surrogacy-named entity, and that Heavenly Way was later associated with the purchase of a property that had been the business address of Hope Surrogacy LLC, which Zhang organized (¶¶ 396-402). But it states that it does not allege that the common address "standing alone proves common ownership" (¶ 397), and an address shared in public records is not a fact about the agency's ownership or control that Xuan is alleged to have known and withheld. Its references to a "previously unknown personal affiliation involving Silvia Shasha Zhang, Guojun Xuan, and Mark Surrogacy LLC" (¶ 923; *see* ¶¶ 36, 904) describe what Tronderrica James said in July 2025 that she had learned; they do not plead what that affiliation was as to Xuan. His business overlap with Zhang, his co-Intended Parent (¶¶ 392-393), is a relationship between the two contracting Intended Parents themselves, and the SAC does not explain how it bears on whether the agency was independent of them. And the SAC does not identify which of Xuan's relationships rendered which representation misleading, or what material fact about the agency Xuan knew at the time of contracting. As for Future Spring, the pleading cannot be that Xuan concealed the entity before it was formed; and while § II.5's warranty also reaches omissions during performance, the SAC still does not plead when Xuan

learned of Future Spring's formation or conduct, what material fact he then knew, or what he purposely withheld from Plaintiffs during the pregnancy. To the contrary, it disclaims the link: Plaintiffs "do not allege that the existence of those businesses alone establishes liability" (¶ 127), allege only "substantial factual questions" about Xuan's "relationship to the surrogacy entities" (¶ 128), do not allege, from the records alone, that Xuan owned Future Spring (¶¶ 161, 405, 1039), and concede that the "precise relationship" between Mark Surrogacy and the separately documented entities "is not established by the public records presently available" (¶ 147). A pleaded category of duty plus unresolved questions is not a known, concealed material fact attributable to Xuan. The elements are the same in substance under Nevada law. *Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 1485, 970 P.2d 98, 110 (1998) (fraudulent concealment), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 117 Nev. 265, 271, 21 P.3d 11, 15 (2001); *Bulbman, Inc. v. Nev. Bell*, 108 Nev. 105, 110-11, 825 P.2d 588, 592 (1992) (intentional misrepresentation).

**B. The Negligent-Misrepresentation Claim Fails as to Xuan (Third Cause of Action).**

Negligent misrepresentation requires a *positive assertion* of fact by the defendant; "an omission or an implied assertion or representation is not sufficient." *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007). A claim that relies entirely on a unified course of alleged fraudulent conduct is "grounded in fraud," and Rule 9(b)'s particularity requirement applies to it as well. *Vess*, 317 F.3d at 1103-04. The Third Cause of Action is pleaded "in the alternative" to intentional fraud and rests on the same "material representation[s] described above." (¶ 1226.) Although the count posits that a representation may have been "made without actual knowledge of falsity" (*id.*), it identifies no representation other than those the fraud count relies on. It fails as to Xuan for the reason developed in Part IV.A: the Contract's description of the

agency's role asserts nothing about the agency's ownership or affiliations, and no other assertion is pleaded as Xuan's own or adequately attributed to him, whether the statement is framed as an affirmative misstatement or as a misleading partial representation. That Rule 9(b) deficiency does not depend on whether California or Nevada law supplies the substantive elements. The claim also fails under California's positive-assertion requirement even if Rule 9(b) did not apply: the only representation the SAC attributes to Xuan is the Contract he co-signed; any independence read into § I.1 would be at most implied, and § II.5, as shown in Part IV.A, asserts nothing about the agency's ownership or independence. *Apollo*, 158 Cal. App. 4th at 243. The Third Cause of Action should be dismissed as to Xuan.

**C. The Implied-Covenant Claim Is Superfluous (Fifth Cause of Action).**

The implied covenant of good faith and fair dealing cannot impose substantive duties beyond those in the contract's express terms, and a covenant claim that rests on the same acts and seeks the same damages as the companion breach claim may be disregarded as superfluous. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349-52 (2000); *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (allegations that "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action . . . may be disregarded as superfluous"). The Fifth Cause of Action is built substantially on conduct the breach claim already covers (the alleged nondisclosures and the post-birth hospital-contact restriction) and seeks the same "recoverable contractual damages." (¶¶ 1239-1242.)

The count's disclaimer that it does not "duplicate recovery" (¶ 1242) does not make it distinct, because each theory it pleads (¶ 1239) is either already governed by the express breach claim or insufficient on its own terms. First, the nondisclosure theory, that Defendants concealed the arrangement's true structure, is the same wrong the breach count pleads: the SAC alleges the misrepresentations

and omissions "concerning the agency structure, affiliations, roles, and other material relationships" "violated Section II.5" of the Contract (¶ 1234), and the Contract makes such a violation a material breach (§ XXIV.5). Second, the hospital-contact theory is likewise an express-contract claim: § XXI.1 gave the surrogate "up to one (1) hour" with the child in the hospital room, and the SAC pleads that the post-birth restriction "frustrated and denied" that provision as a breach (¶ 1235). For both, the covenant count seeks "recoverable contractual damages" (¶ 1242), the same contract damages the breach count seeks (¶ 1237); as to them it is duplicative and adds nothing.

Third, the pregnancy-communication theory does not duplicate an express term, but it fails on the covenant's own terms. The Contract does contemplate direct communication with the Intended Parents: it directs the Surrogate to "communicate with the Intended Parents at least once every two weeks" about medical matters (§ VIII.1; *see also* §§ VI.16, VIII.2). But those provisions place the update duty on the Surrogate; they specify no reciprocal response frequency and do not guarantee the Surrogate personal contact from Zhang. The implied covenant protects the benefits the parties agreed to; it does not supply a term they omitted. *Guz*, 24 Cal. 4th at 349-50. The SAC alleges that the Intended Parents "exercised contractual discretion" and engaged in "persistent communication failures despite repeated notice of their emotional effect" (¶ 1239), but it identifies no discretion the Contract gave them over communication and no communication benefit the Contract promised Plaintiffs; notice that Plaintiffs wanted more contact does not turn an unpromised benefit into a contractual one. The SAC identifies no contracted-for benefit of guaranteed direct communication from Zhang, and the conduct it pleads, that Tronderrica James repeatedly asked for more reliable direct communication, that Zhang promised to improve, and that Zhang later apologized for "much miscommunication" and for "not communicating throughout the pregnancy" (¶¶ 1239-1240), does not show the deliberate frustration of a

contemplated benefit that a covenant claim requires. Nevada likewise requires more than disappointment: the covenant is breached when a party performs "in a manner that is unfaithful to the purpose of the contract" so that "the justified expectations of the other party are thus denied," *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 234, 808 P.2d 919, 923 (1991), and communication failures, apologies, and unmet requests for more frequent contact do not plead that kind of deliberate unfaithfulness. The remaining item in ¶ 1239, "conduct surrounding administration of the pregnancy," identifies no act and no contractual benefit it frustrated. The Fifth Cause of Action should be dismissed as to both Defendants.

The choice-of-law provision does not change this analysis. The implied covenant is a creature of the contract, and the Contract selects Nevada law (§ XLII.1), which California would ordinarily enforce for a contract claim where, as here, the chosen State bears a substantial relationship to the parties and the transaction, the Contract having anticipated birth and parentage proceedings in Nevada (§§ VI.18, XIV.1, XIV.4). *Nedlloyd*, 3 Cal. 4th at 464-66. Nevada implies the covenant in every contract, *A.C. Shaw Constr., Inc. v. Washoe Cnty.*, 105 Nev. 913, 914, 784 P.2d 9, 9-10 (1989), under which each party agrees "not to do anything to destroy or injure the right of the other to receive the benefits of the contract," *Hilton Hotels*, 107 Nev. at 234, 808 P.2d at 923 (approving jury instruction), and a party may breach it, among other ways, by literally complying with the contract's terms while deliberately countervening its purpose, *id.* at 232, 808 P.2d at 922. Even where good faith presents a question of fact, a plaintiff must still plead facts showing deliberate conduct that defeated a justified expectation. The nondisclosure and hospital-contact theories are duplicative of the express breach claim under California law, as shown above. The communication theory pleads no such conduct under either State's law: the Contract assigns the relevant communication duties to the Surrogate and promises no responsive personal

communication from Zhang, and the SAC alleges persistent communication failures after notice, promises to improve, and apologies, not a deliberate effort to deprive Plaintiffs of a benefit the Contract contemplated.

**D. The Emotional-Distress Claim Fails as to Xuan (Sixth Cause of Action).**

Intentional infliction of emotional distress requires conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993)); *McMahon v. Craig*, 176 Cal. App. 4th 1502, 1515-16 (2009). The Sixth Cause of Action is directed at Zhang "and, to the Extent Supported by the Evidence, the Other Defendants" (SAC, Sixth Cause of Action heading), and it is built on a "cumulative course of alleged conduct" whose specific acts are Zhang's, most prominently her acknowledged request that the hospital not bring the baby to the surrogate's room. (¶¶ 1243-1247.) Defendants do not, on this Motion, challenge that claim as against Zhang.

As to Xuan, however, the SAC pleads no extreme-and-outrageous act of his own. It alleges that liability is "sought only for conduct directly committed, authorized, ratified, or otherwise legally attributable" to a given defendant (¶ 1248), a formula that names a legal theory without pleading a fact. And the conduct "must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." *McMahon*, 176 Cal. App. 4th at 1516 (quoting *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991)). The pleading identifies no outrageous conduct by Xuan directed at either Plaintiff, and it alleges that Xuan was not present when the medical emergency and the birth occurred (¶ 500). The hospital restriction, which Tronderrica James was told reflected a change of position by "the Intended Parents" (¶ 760), is attributed in the SAC's specific allegations to Zhang, who, it alleges, "was, at minimum, participating in or influencing the decision" and on whose behalf the agency contacted the hospital (¶¶ 784-785; *see* ¶ 1247). And to the extent the count rests on the alleged

misrepresentations and concealment (¶ 1244), it fails as to Xuan for the reasons given in Part IV.A. Nor does the SAC connect the medical complications of the delivery (¶¶ 1245-1246) to any act of Xuan's, or plead any conduct by him aimed at Travis James. The Sixth Cause of Action should be dismissed as to Xuan.

**E. The Civil-Conspiracy Claim Fails as to Xuan (Seventh Cause of Action).**

Civil conspiracy is not a separate tort. It is a basis for holding one defendant liable for another's tort, and it "presupposes" that the defendant owed the plaintiff an independent duty and is not otherwise immune. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994). To plead it, a plaintiff must allege the formation and operation of the conspiracy (an agreement among two or more persons to accomplish a wrongful objective) and resulting damage. *Id.* at 511; *accord Consol. Generator-Nev., Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998). The SAC pleads no such agreement as to Xuan. Its conspiracy allegations are that the Intended Parents and their agency "coordinated" the surrogacy and that Xuan "participat[ed] in material decisions." (¶¶ 1251-1253.)

The dispositive defect is the absence of a pleaded agreement. The SAC alleges that each defendant "knowingly participated in the required agreement or common design" (¶ 1254), but that is a conclusion, not a fact: it does not allege when Xuan agreed, with whom, or to commit what tort, and his alleged "participation in material decisions" (¶ 1251) describes his role as a contracting Intended Parent, not a meeting of the minds to defraud. An agreement may be inferred from circumstances, but the inference requires facts showing that the defendant had actual knowledge that a tort was planned and concurred in the scheme with knowledge of its unlawful purpose; knowledge without intent to aid in the tort, or mere association with the alleged wrongdoers, is not enough. *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1582 (1995). The SAC pleads no such circumstances as to Xuan. Coordination in carrying out a surrogacy

contract is not, without more, an agreement to commit a tort. Agent immunity supplies a narrower, additional answer, not the main one: to the extent the claim rests on coordination between the Intended Parents and Mark Surrogacy in its "authorized intermediary role" (¶ 1256), an agent acting on its principal's behalf, rather than for its own advantage, cannot be treated as conspiring with its principal. *Doctors' Co. v. Superior Court*, 49 Cal. 3d 39, 44-45 (1989); *see Applied Equip.*, 7 Cal. 4th at 512. That principle does not dispose of every combination the SAC alleges (it would not reach, for instance, an agreement between Xuan and a separate entity), and because Zhang's fraud claims are not challenged on this Motion, the derivative count cannot be rejected merely for want of an underlying tort. But conspiracy "cannot create a duty or abrogate an immunity," *Applied Equip.*, 7 Cal. 4th at 514, and it does not turn a multi-actor fraud allegation into a pleaded agreement. The count's alternative label, "concerted action," does not change the analysis. The SAC pleads that theory through the same "required agreement or common design" (¶ 1254), and a common design is itself an agreement among two or more persons to commit a tortious act. *Kidron*, 40 Cal. App. 4th at 1582; *accord Dow Chem.*, 114 Nev. at 1489, 970 P.2d at 112 (concert of action and civil conspiracy both "require an agreement"). Because the SAC alleges no facts showing that Xuan joined a tortious common design, the Seventh Cause of Action should be dismissed as to him.

## V. LEAVE TO AMEND

Leave to amend is to be granted freely, and the Ninth Circuit applies that policy "with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). A court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts," *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)), and that rule applies with added force to a pro se

plaintiff, *id.* at 1131. *See also Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996), *overruled in part on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc); *Foman v. Davis*, 371 U.S. 178, 182 (1962) (futility). Defendants acknowledge that standard. As to the claims against Xuan, however, the SAC's own allegations show why further amendment would not cure the defects: apart from the Contract he co-signed, whose description of the agency does not assert its independence, it attributes every identified statement to a speaker other than Xuan (¶¶ 1207, 1255); it does not allege that the public records establish Xuan's ownership or control of Mark Surrogacy or his ownership of Future Spring (¶¶ 127-128, 147, 161, 405); it identifies no outrageous act by Xuan directed at either Plaintiff and alleges that he was not present for the emergency or the birth (¶ 500); and it pleads no facts of an agreement he joined. Defendants therefore respectfully submit that those claims should be dismissed without leave to amend.

If the Court nonetheless grants leave, Defendants ask that any amendment be required to state, as to Xuan specifically and with the particularity Rule 9(b) demands where it applies, each fact on which each claim against him depends. The implied-covenant claim (Fifth) should be dismissed as duplicative to the extent it tracks the express breach claim. To the extent Plaintiffs contend the pregnancy-communication theory can be re-pleaded as the deliberate frustration of an identified contractual benefit, rather than a restatement of the breach claim, dismissal of that theory may be granted with leave to amend.

## VI. CONCLUSION

Defendants Silvia Shasha Zhang and Guojun Xuan respectfully request that the Court dismiss the First, Second, Third, Sixth, and Seventh Causes of Action as to Defendant Guojun Xuan; dismiss the Fifth Cause of Action as to both Defendants; and grant such further relief as the Court deems just and proper.

Dated: September 22, 2026 **SEYFNIA & PRYBYLO, LLP**

By: */s/ Farzad Seyfnia*

Farzad Seyfnia
Attorneys for Defendants Silvia Shasha Zhang and Guojun Xuan

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Silvia Shasha Zhang and Guojun Xuan, certifies that this Memorandum of Points and Authorities contains 5,779 words, which complies with the 7,000-word limit of Local Rule 11-6.1. The undersigned relied on the word-count feature of the word-processing program used to prepare this document.

Dated: September 22, 2026 **SEYFNIA & PRYBYLO, LLP**

By: */s/ Farzad Seyfnia*
Farzad Seyfnia
Attorneys for Defendants Silvia Shasha Zhang and Guojun Xuan