Tronderrica James and Travis James
Plaintiffs, Pro Se
Mailing Address: 7225 Moonraker Ave., Unit 109, Las Vegas, NV 89178
Telephone: 318-759-9557
Email: tronjamesbooks@gmail.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRONDERRICA JAMES and TRAVIS JAMES,<br>Plaintiffs,<br><br>v.<br><br>SILVIA SHASHA ZHANG; GUOJUN XUAN; MARK SURROGACY INVESTMENT LLC; and FUTURE SPRING SURROGACY, a California general stock corporation,<br>Defendants. | Case No. 2:25-cv-09450-FLA-KS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PORTIONS OF SECOND AMENDED COMPLAINT**<br><br>Hearing: October 30, 2026<br>Time: 1:30 p.m. / Courtroom: 6B<br>Judge: Hon. Fernando L. Aenlle-Rocha |

## MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS


I. INTRODUCTION AND THE MOTION'S LIMITED SCOPE 4

II. PLEADED FACTS AND THE CONTRACT'S ACTUAL TERMS 5

III. GOVERNING RULES 7

IV. THE FIRST CAUSE: FRAUD / INTENTIONAL MISREPRESENTATION AS TO XUAN 8

V. THE SECOND CAUSE: FRAUDULENT CONCEALMENT AS TO XUAN 10

VI. THE THIRD CAUSE: NEGLIGENT MISREPRESENTATION AS TO XUAN 12

VII. THE FIFTH CAUSE: IMPLIED COVENANT AGAINST BOTH CONTRACTING DEFENDANTS 13

VIII. THE SIXTH CAUSE: IIED AS TO XUAN 15

IX. THE SEVENTH CAUSE: DERIVATIVE CONSPIRACY / CONCERTED ACTION AS TO XUAN 16

X. FUTURE SPRING, CONTRACT INCORPORATION AND THE ACTUAL SCOPE OF THIS MOTION 17

XI. DISCOVERY AND LEAVE TO AMEND ARE DISTINCT ISSUES 18

XII. MEET-AND-CONFER DECLARATION AND REMEDIES 20

XIII. CONCLUSION 21

CERTIFICATE OF COMPLIANCE 22

# TABLE OF AUTHORITIES

Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503 (1994) 16

Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226 (2007) 12

Doctors· Co. v. Superior Court, 49 Cal. 3d 39 (1989) 16

Ashcroft v. Iqbal, 556 U.S. 662 (2009) 7

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) 7

Christensen v. Superior Court, 54 Cal. 3d 868 (1991) 15

Hebbe v. Pliler, 627 F.3d 338 (9th Cir. 2010) 7

Hilton Hotels Corp. v. Butch Lewis Productions, Inc., 107 Nev. 226 (1991) 14

Kidron v. Movie Acquisition Corp., 40 Cal. App. 4th 1571 (1995) 16

Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988 (9th Cir. 2018) 8

Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) 19

Neubronner v. Milken, 6 F.3d 666 (9th Cir. 1993) 7

Rattagan v. Uber Technologies, Inc., 17 Cal. 5th 1 (2024) 11

Swartz v. KPMG LLP, 476 F.3d 756 (9th Cir. 2007) 7

Rules: Fed. R. Civ. P. 8, 9(b), 12(b)(6), 15; C.D. Cal. L.R. 11-6.1
Statute: Cal. Civ. Code § 3294

## I. INTRODUCTION AND THE MOTION'S LIMITED SCOPE

Plaintiffs oppose the September 22, 2026 motion (Dkt. 91). Defendants do not ask the Court to dismiss any challenged tort claim against Silvia Shasha Zhang; they state that she will answer those claims. Nor do they seek dismissal of the Fourth Cause of Action for breach of contract against either contracting Intended Parent. They seek dismissal of the First, Second, Third, Sixth and Seventh Causes of Action only as to Guojun Xuan, and of the Fifth (implied-covenant) Cause of Action as to both Xuan and Zhang. (Mot. 2.) The issues should remain confined to that relief. The motion does not adjudicate any claim against nonmoving entity Defendants, or the ultimate merits of Future Spring Surrogacy's alleged use of Plaintiffs' information.

Defendants open by contrasting an earlier thirteen-page complaint with the SAC's more than one hundred pages. (Mot. 1.) That comparison is not a Rule 8 motion, and length is neither proof of particularity nor proof of insufficiency. The SAC supplies a chronology, separately attributes known speakers, differentiates similarly named entities, identifies contractual terms, describes the evidentiary limits of public records, and alleges facts material to each cause of action. In the September 9 meet-and-confer, counsel also acknowledged that the SAC had done a “pretty good job” curing most previously identified deficiencies, according to Plaintiff Tronderrica James's contemporaneous notes. That acknowledgment does not concede sufficiency of every count; it places the expanded pleading in context. The Court should decide Defendants' actual Rule 9(b) and 12(b)(6) challenges against the allegations, not page count.

The core question concerning Xuan is not whether he personally authored Zhang's or an agency employee's message. The SAC expressly identifies the direct speakers and separately alleges Xuan's personal execution of the Contract and escrow amendment, his participation in compensation decisions, his communications through agency personnel, and his identified business

relationships. (SAC ¶¶ 115–128, 387–396, 1204–1225, 1250–1257.) Plaintiffs acknowledge that the sufficiency of the connection between that conduct and each tort must be tested claim by claim. But Defendants improperly treat the absence of an internal message or final ownership determination as dispositive of all legal theories while seeking dismissal without leave. The Court should deny the motion; alternatively, any identified deficiency should be resolved without prejudice and with leave to amend.

The requested relief cannot be broadened by suggestion. Dkt. 91 seeks dismissal of the identified Xuan tort counts and the Fifth Cause against both contracting defendants; it does not seek a stand-alone Rule 8 prolixity ruling, adjudication of the nonmoving entities, dismissal of the Fourth Cause, or a separate motion to strike punitive relief. Plaintiffs' opposition accordingly supplies individualized defenses to each challenged claim, rather than attempting to prove the underlying case in full. (Mot. 1–2, 17.)

## II. PLEADED FACTS AND THE CONTRACT'S ACTUAL TERMS

The SAC alleges identified recruitment statements by Zhang (through the Lin Hui account) and Jasmine Hernandez in October 2023; repeated references by Hernandez and Andrea Cid to a separate agency and separate “IPs”; and Zhang's February 7, 2024 statement that she had spoken with “the agency” and that “My husband and I can not accept those terms.” (SAC ¶¶ 1205–1207.) Plaintiffs do not falsely attribute Zhang's words to Xuan; they allege her statement conveyed a jointly made compensation decision. Xuan signed the written gestational-surrogacy agreement and later escrow amendment, received pregnancy updates, and communicated with agency personnel using translation assistance. (Id. ¶¶ 115–124, 387–389.)

Contract § I.1 identifies Mark Surrogacy as the “Agency,” says it acts “as an agent between” the Intended Parents and Plaintiffs, and states that the Agency “is not a Party to this Contract.” This describes an intermediary and its

nonparty status; it does not expressly promise that no intended parent has any historical corporate, financial, or operational connection with any similarly named entity. Contract § II.5 states a reciprocal warranty, expressly qualified "to the best of their knowledge," that relevant oral or written statements are true, correct and complete, and that the parties have not and will not purposely omit or falsify major information. Section XXIV.5 treats a violation of representations or warranties or a party's misrepresentation as a material breach. The legal effect of those words is contested; Plaintiffs do not ask the Court to treat them as an express representation that Xuan owned, controlled, or knew of every agency affiliation.

The SAC identifies Zhang's earlier role in a separately documented MARK SURROGACY INVESTMENT LLC entity; Xuan's documented roles in YUDAO Management and Heavenly Way Investment LLC; business overlap between Xuan and Zhang; and documented relationships between Xuan and Leijun Tang. (SAC ¶¶ 100–128, 147, 392–402, 1209, 1215.) The SAC does not allege that shared addresses, names, a marriage, or business connections alone prove that Xuan owned Mark Surrogacy LLC or Future Spring. Its allegation is narrower: these are identified circumstantial facts supporting the alleged undisclosed relationships and appropriate discovery into the remaining internal facts. (Id. ¶¶ 127–128, 147, 161, 1258–1263.)

The SAC further alleges that Future Spring Surrogacy, a California general stock corporation formed during the pregnancy, later publicly used pregnancy-specific ultrasound imagery and information despite Plaintiffs' lack of a contract with it. It identifies Tang in Future Spring records and alleges prior connections between Tang and Xuan. (SAC ¶¶ 149–166, 1172–1173, 1222.) Its appearance and use of the materials are alleged conduct; their source, the responsible transmitter, and any Xuan-specific knowledge or authorization are distinct and presently disputed questions. Plaintiffs do not argue that the publication itself establishes Xuan's ownership or participation.

One entity distinction remains essential: the Contract names Mark Surrogacy LLC as the nonparty Agency. The SAC separately describes a historically registered MARK SURROGACY INVESTMENT LLC entity, including the 2021 filing identifying Zhang in a management/member role, and does not treat every similarly named entity as legally identical. (SAC ¶¶ 100–103, 139–147, 1208–1209.) The Court may credit the pleaded overlap as circumstantial evidence without treating it as a final adjudication of which legal entity performed each act. Whether the exact entities and their operations were connected is a factual issue, not a reason to ignore the alleged historical overlap.

## III. GOVERNING RULES

Rule 12(b)(6) asks whether well-pleaded facts and reasonable inferences state a plausible claim; it does not resolve contested facts or make Plaintiffs prove their case. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Pro se pleadings are liberally construed, although the governing pleading requirements remain applicable. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

Rule 9(b) requires the circumstances of fraud, including each defendant's identified role, to be pleaded with particularity. It does not require every participant personally to speak a fraudulent sentence, but generalized participation or an unparticularized agency allegation alone is insufficient. Swartz v. KPMG LLP, 476 F.3d 756, 764–65 (9th Cir. 2007). Knowledge and intent may be alleged generally under Rule 9(b), but must still be plausible under Rule 8. When key facts lie peculiarly within the opposing party's knowledge, particularity may be relaxed only if the complaint gives a factual basis for the belief; a request for discovery is not a substitute for one. Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993).

The Contract may be considered to the extent properly incorporated, but incorporation is not a vehicle to accept Defendants' interpretation as proof of contested real-world facts about ownership, control, or knowledge. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002–03, 1014 (9th Cir. 2018). Plaintiffs do not contest that the Court may read the genuine agreement relied on in the SAC. Earlier suggestions that Plaintiffs attach it do not supply a separate legal ground for dismissal, and Plaintiffs' decision not to attach it was not a concession of its effect.

An essential distinction governs this case. Plausibility is not proof by a preponderance, much less clear and convincing proof; Rule 12 requires pleaded facts permitting a reasonable inference of liability. Rule 9(b) requires the identifiable circumstances of the fraud, including the defendant's own role, but expressly permits knowledge and intent to be alleged generally. Whether the internal communications ultimately establish that Xuan learned of a specific agency relationship before the agreement, authorized an intermediary, or ratified material conduct remains a question for appropriately scoped discovery once an adequate claim is pleaded. A plaintiff need not attach each anticipated deposition or internal financial record to a complaint. At the same time, the court must not use a general possibility of discovery to excuse a missing plausible Xuan-specific connection. Fed. R. Civ. P. 8(a), 9(b), 12(b)(6); Swartz, 476 F.3d at 764–65; Neubronner, 6 F.3d at 672.

## IV. THE FIRST CAUSE: FRAUD / INTENTIONAL MISREPRESENTATION AS TO XUAN

Defendants accurately observe that the specifically quoted October 2023 and February 2024 communications are attributed to Zhang, Hernandez and Cid, not Xuan. (Mot. 6–8; SAC ¶¶ 1205–1207, 1255.) Plaintiffs do not ask the Court to impute every one of those speakers' words to him simply because he is Zhang's husband or a contracting Intended Parent. Their alleged connection is that Zhang's February 7 communication expressly reported a joint

compensation decision ("My husband and I"), the two Intended Parents executed the document identifying the arrangement's participants and warranting the truth and completeness of related statements, and Xuan communicated through the personnel who allegedly maintained the represented separation. (SAC ¶¶ 117–124, 388–389, 1207–1209.)

The warranty is an affirmative statement that Xuan signed; it is not, by itself, an affirmative assertion that the agency had independent ownership. Plaintiffs' theory is that the warranty and contractual structure must be read alongside the specifically pleaded precontract representations and alleged material omissions, and that Xuan's knowledge, authorization, adoption, or ratification can be inferred from his pleaded role and conduct if those circumstances are credited. The Court should not infer from the complaint's accurate attribution of direct speakers that Xuan necessarily lacked any legally attributable role. Nor, however, is mere contract execution automatically tortious. The correct inquiry is whether the pleaded circumstances provide a plausible and sufficiently particular connection under Swartz. Plaintiffs contend they do, particularly when the factual chronology is considered as a whole and the disputed mental-state inferences are taken in their favor.

The motion also disputes the scope of any agent's authority and Xuan's knowledge of particular statements. (Mot. 7–8.) The SAC alleges authorized intermediary functions including recruitment, negotiation, payment, pregnancy and hospital coordination, and pleads ratification subject to legally sufficient knowledge and adoption rather than automatic attribution. (SAC ¶¶ 1255–1257.) Whether any particular statement was within the relevant authority remains contested; Plaintiffs seek liability only when the necessary facts establish that link. If the Court finds the allegations do not adequately connect Xuan to an affirmative false statement, that is a discrete deficiency concerning Xuan, not a basis for rejecting the pleaded representations of the identified speakers or dismissing with prejudice before the possibility of a

curative pleading is considered.

The pleaded basis for attribution is more specific than his surname or signature. Zhang's February 7, 2024 statement identified a decision made jointly with "my husband"; Hernandez described the Intended Father communicating through a Mandarin-speaking channel and an assisting coworker; Xuan signed the agreement naming the intermediary and selected a different escrow holder by written amendment; and the SAC identifies contemporaneous or later-discovered records of actual business overlap involving Zhang, Xuan, Heavenly Way, YUDAO, and Tang. (SAC ¶¶ 115–126, 387–402, 1207–1209.) Those allegations do not prove Xuan personally knew any particular agency statement was false. They do, however, identify the communications, decisions, roles, and represented structure that support Plaintiffs' proposed inference, to be assessed cumulatively rather than as isolated addresses or a signature alone. The contractual warranty is relevant to what Xuan represented in writing, but it does not automatically make him the direct speaker of Zhang's or Hernandez's words.

## V. THE SECOND CAUSE: FRAUDULENT CONCEALMENT AS TO XUAN

The motion expressly concedes that the concealment count pleads Xuan-specific facts and a recognized potential duty category arising from transactional dealings, exclusive knowledge, and misleading partial disclosures. (Mot. 8.) The contested element is more precise: what particular material agency-related fact Xuan knew, and at what point the disclosure duty arose. Plaintiffs do not equate knowledge of Tang or Zhang with knowledge of Mark Surrogacy's ownership. Nor does the SAC claim Future Spring existed when the March 2024 Contract was signed. Instead, it identifies the alleged omitted subjects: relationships among Intended Parents and surrogacy businesses, overlap in personnel and operational roles, and subsequent access to and use of pregnancy information during performance. (SAC ¶¶

1214–1225.)

The SAC identifies the point of requested disclosure: the recruitment and contracting period for existing relationships that materially qualified the allegedly represented arrangement; and, separately, continued performance when a later-created operation allegedly obtained and used intimate pregnancy information. (SAC ¶¶ 1209–1222.) It pleads direct contractual dealings, partial representations, Plaintiffs' inability to know internal relationships, reliance on the alleged incomplete picture, and how their decision to enter and continue would have differed. (Id. ¶¶ 1216–1225.) California recognizes an independent concealment claim in a contractual relationship when its independent tort elements and harm outside the contemplated contractual risks are established. Rattagan v. Uber Techs., Inc., 17 Cal. 5th 1, 40–41 (2024). That rule does not eliminate the need to identify knowledge, materiality, duty and reliance as to Xuan individually.

Defendants invoke the SAC's careful statement that public records do not, standing alone, prove Xuan's ownership of Mark Surrogacy or Future Spring. (Mot. 9–10.) That is a limitation on one method of proof, not a stipulation that no relevant connection existed. Plaintiffs request that the Court assess the pleaded circumstantial facts cumulatively rather than treating each as a conclusive ownership test. Knowledge and intent may be alleged generally, but must be supported by facts. The identified communications, written agreement, subsequent amendment, formal business roles, relationships, and information movement provide the pleaded basis; evidence of the exact internal communications and control remains unavailable to Plaintiffs. See Neubronner, 6 F.3d at 672. If the Court concludes the current allegations insufficiently connect Xuan to a known, material Mark-specific fact, Plaintiffs alternatively request leave to particularize the count. The later Future Spring publication does not retroactively prove knowledge of a nonexistent company before formation.

In particular, the alleged concealed subject is the material extent of existing relationships and operational overlap between the Intended Parents and the intermediary represented as separate, not merely the fact that Xuan had other investments. A direct contracting party could possess unique knowledge about his own role and the relationships he used to administer the arrangement; the SAC alleges partial representations made while the real structure was not disclosed and identifies the periods during which disclosure mattered. (SAC ¶¶ 1215–1224.) But the post-contract Future Spring corporation cannot establish Xuan's pre-formation knowledge, and the reported presence of a surrogacy business in an associated property cannot alone establish its precise legal ownership. These evidentiary boundaries underscore why an inference, if supported by the pleaded facts, is not a substitute for final proof and why later discovery will bear on the disputed facts.

## VI. THE THIRD CAUSE: NEGLIGENT MISREPRESENTATION AS TO XUAN

Defendants correctly cite Apollo Capital Fund, LLC v. Roth Capital Partners, LLC, 158 Cal. App. 4th 226, 243 (2007), for the California requirement of a positive factual assertion: silence or an implication alone does not supply negligent misrepresentation. (Mot. 10–11.) Plaintiffs do not attempt to recast an omission as an affirmative statement merely by calling it incomplete. The SAC expressly pleads this theory in the alternative and identifies the positive representations by the particular speakers. (SAC ¶¶ 1226–1229.)

As to Xuan, the written § II.5 warranty is affirmative in form, but its express “to the best of their knowledge” limitation and its general subject do not themselves say Mark was independently owned. Its relevance is to whether the separately alleged positive assertions about the transaction are legally attributable to Xuan and whether he had reasonable grounds for the contractual warranty. Zhang's identified February 7 affirmative statement also expressly conveys that Xuan jointly made the compensation decision, without making

him its direct speaker. These are the two asserted pathways; neither is established by marriage alone. Plaintiffs request that the Court consider the pleaded agency/adoption facts and the full text of the warranty. If neither supplies a legally attributable positive misstatement, the Third Cause may require a different pleading outcome as to Xuan than concealment; Plaintiffs alternatively request leave rather than converting the affirmative-statement issue into a dismissal with prejudice of unrelated claims.

**VII. THE FIFTH CAUSE: IMPLIED COVENANT AGAINST BOTH CONTRACTING DEFENDANTS**

Defendants' duplication objection must be addressed on its own terms. The express breach count alleges violations of §§ II.5, XXI.1, XXII.1, the fee provisions, and § XXIV. (SAC ¶¶ 1231–1237.) To the extent the Fifth Cause seeks the same contractual damages for the same failure to provide the hospital contact expressly contemplated by § XXI.1 or the same breach of the disclosure warranty, merely relabeling those violations cannot create an independent recovery. Plaintiffs do not seek one. The separate covenant theory concerns the manner of performance and alleged exercise of discretion within the medical, communication, agency-coordination and post-birth framework. (Id. ¶¶ 1238–1242.)

The claimed contractual benefit is not an invented promise that Zhang personally respond to every message at a guaranteed interval. Rather, Plaintiffs contracted for an arrangement administered in good faith through identified parties and intermediaries, with pregnancy information communicated for the pregnancy's care and the parties' duties, and with a limited post-birth contact opportunity contemplated by § XXI.1. The SAC alleges that Defendants performed or exercised control over the administration of those aspects in a manner that frustrated the contemplated benefit, including repeated communication breakdowns after promises to improve and the handling of post-birth contact immediately after emergency surgery. (SAC ¶¶ 1238–1242.)

The question is whether the particular conduct alleged deliberately defeated a justified contractual expectation, rather than merely disappointed an unpromised desire for personal contact.

Nevada law, selected in § XLII.1, recognizes a contract-based implied covenant where a party may literally comply with express terms yet deliberately contravene the agreement's purpose and defeat the other party's justified expectations. Hilton Hotels Corp. v. Butch Lewis Prods., Inc., 107 Nev. 226, 232–34, 808 P.2d 919, 922–23 (1991). The doctrine cannot supply wholly new contractual promises. Plaintiffs plead the Fifth Cause separately and disclaim double recovery. (SAC ¶ 1242.) Rule 8(d) permits alternative theories, but does not save a theory that alleges no additional legally cognizable conduct. The Court should preserve the covenant claim insofar as it alleges frustration of performance distinct from straightforward breach; alternatively, if the Court finds the present articulation too general, grant leave to identify the specific conduct, discretion, benefits and nonduplicative injury with greater precision rather than dismiss the entire count with prejudice.

Nevada's implied-covenant doctrine does not promise an ideal personal relationship. Plaintiffs instead identify specific benefits contemplated by an unusually sensitive contract: administered pregnancy-related communication necessary for the parties' performance, truthful coordination within the identified agency framework, and the limited hospital-room contact expressly described in § XXI.1. The distinct alleged covenant conduct is the manner in which Defendants exercised control or discretion over implementation after repeated notice and after an emergency, insofar as that conduct frustrated justified expectations even if particular words of an express clause were arguably followed. (SAC ¶¶ 1238–1242.) Any overlap in the same injury must be addressed through proof and a prohibition on double recovery. If the Court finds only identical express breaches and no distinct exercise of discretion, Plaintiffs request leave to particularize the claimed contractual benefit and

nonduplicative conduct rather than assert an automatic right to a separate covenant recovery.

## VIII. THE SIXTH CAUSE: IIED AS TO XUAN

The motion does not challenge IIED as to Zhang. (Mot. 14.) The challenged issue is Xuan-specific attribution, not whether the mere occurrence of a frightening emergency automatically makes every contracting party liable. The SAC alleges a cumulative course of conduct, including asserted inducement, concealment, pregnancy-related communications, subsequent misuse of sensitive information and restrictions on contact after James's emergency cesarean delivery. (SAC ¶¶ 1243–1249.) It specifically pleads Zhang's later acknowledgment of her hospital request; that statement is not an admission by Xuan. (Id. ¶¶ 801–803, 1247.)

Plaintiffs recognize California's requirement that the defendant's outrageous conduct be directed at the plaintiff, or occur with the requisite awareness of the plaintiff and probable distress; association with the actor alone is insufficient. Christensen v. Superior Court, 54 Cal. 3d 868, 903–06 (1991). The SAC's Xuan-specific allegations are his role as a participant and contracting Intended Parent, communications and material decisions through the agency, alleged concealment during dealings directed at Plaintiffs, and hospital personnel's report that the "Intended Parents" changed their position. (SAC ¶¶ 115–124, 760, 1251.) It does not establish that Xuan personally directed the hospital or knew of the postoperative restriction. The pleaded theory is only direct, authorized, ratified or otherwise legally attributable conduct, not liability for Zhang's conduct merely from marriage. (Id. ¶ 1248.) If the Court finds those facts insufficient to connect Xuan to an actionable directed act, dismissal should be without prejudice, with leave to allege further Xuan-specific facts if available. His absence from delivery does not itself resolve pre-delivery conduct alleged to be directed at Plaintiffs, although it limits reliance on an in-person post-birth act.

**IX. THE SEVENTH CAUSE: DERIVATIVE CONSPIRACY / CONCERTED ACTION AS TO XUAN**

Civil conspiracy is not a freestanding tort. Plaintiffs must plead an underlying tort, knowledge of its unlawful purpose, and an agreement or common design in which Xuan knowingly participated. Mere lawful business contacts, marriage, agency work, or fulfillment of contract obligations do not establish that agreement. Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510–14 (1994); Kidron v. Movie Acquisition Corp., 40 Cal. App. 4th 1571, 1582–89 (1995). Plaintiffs expressly limit the theory to legally distinct persons or entities and acts constituting an underlying tort. (SAC ¶¶ 1250–1254.)

The inference asserted is a common design to present and maintain materially misleading separation during recruitment and performance. Plaintiffs identify the repeatedly coordinated representation of separate "IPs" and agency, the joint compensation decision conveyed by Zhang, Xuan's use of the relevant agency channels, his execution of the agreement, and the alleged later movement of intimate pregnancy information within a network involving identified relationships. (SAC ¶¶ 1205–1209, 1250–1253.) Those circumstances are more specific than an unadorned assertion that all Defendants "conspired," but the Court must separately decide whether they plausibly support Xuan's knowledge and intentional joinder. A later publication does not by itself demonstrate he joined a 2023 agreement. The exact timing and participants in any common design are disputed matters, not facts Plaintiffs claim to possess directly.

The agency-immunity argument is also not categorical. To the extent a purported conspiracy consists solely of an authorized agent acting for the principal's benefit in a legally nonseparate capacity, Defendants' Doctors' Co. authority presents a limitation. But, as the motion acknowledges, it does not address all potentially distinct actors or combinations, including a proved

agreement involving Xuan and a legally separate actor acting for its own interests. (Mot. 15–16.) Plaintiffs do not ask for an adverse inference from corporate separateness alone. They seek adjudication of the facts and viable theories after discovery; at minimum any missing Xuan-specific agreement particulars should not be deemed incurable without the Rule 15 analysis.

The pleading's post-birth allegations must also be assigned defendant by defendant. The SAC quotes hospital personnel as referring to a changed position of the "Intended Parents," while later communications more directly identify Zhang's hospital request. (SAC ¶¶ 760, 780–786, 801–803.) That earlier plural phrasing is circumstantial; it does not prove that Xuan himself ordered a restriction. Likewise, Xuan's alleged pre-birth participation in an allegedly misleading arrangement does not automatically make his conduct extreme and outrageous under California law. Plaintiffs seek a reasonable inference from identified conduct, awareness and intentional or reckless participation, not collective liability merely because the medical event was traumatic. The Court may assess IIED separately if it regards the existing defendant-specific allegations as inadequate; in that event, Plaintiffs preserve leave for additional Xuan-specific allegations.

## X. FUTURE SPRING, CONTRACT INCORPORATION AND THE ACTUAL SCOPE OF THIS MOTION

The motion acknowledges Future Spring's alleged public use of pregnancy information but focuses on whether Xuan knew of the later operation or its conduct, and does not move to dismiss the substantive tort claims against Zhang. (Mot. 2, 9–10.) Plaintiffs do not construe silence as a concession that the publication was unauthorized or that either contracting Defendant supplied it. The SAC treats Future Spring's publication as subsequent conduct, corroborative and damages evidence, and a basis for investigating the source and movement of material. (SAC ¶¶ 1204, 1214–1215, 1222, 1251, 1258–1260.) Liability must be defendant-specific.

Nor does incorporation of the genuine Contract establish that the agency was independent in fact, or that Xuan knew nothing material. The contract states a role and nonparty status, not its shareholders or every affiliation. Both sides agree that Khoja prevents resolving those disputed external facts against Plaintiffs merely through incorporation. Plaintiffs' failure to attach the Contract earlier neither negates the SAC's quotations nor changes Rule 12. The Court should reject any inference that document length or the document's attachment history replaces an elements-based analysis.

As to conspiracy, the alleged agreement or common design is to maintain a materially misleading separation of roles as the arrangement moved through recruitment, compensation, screening, contract execution, agency communications, and performance. The overt acts identified are the particular communications and coordinated administration described in SAC ¶¶ 1205–1209 and 1250–1254. Plaintiffs do not infer an agreement merely from lawful business ownership; nor do they treat Future Spring's later publication as proof that Xuan joined a pre-contract agreement. The contested inferential step is whether the pleaded decisions and relationships plausibly support Xuan's knowing joinder. Any agency-immunity analysis must consider who was acting for whom and whether distinct persons were pursuing independent interests; the possible existence of separate companies is not itself a categorical exemption from the doctrine.

## XI. DISCOVERY AND LEAVE TO AMEND ARE DISTINCT ISSUES

Plaintiffs do not assert an entitlement to proceed on an otherwise implausible claim simply to explore Defendants' files. The present allegations must first satisfy Rules 8 and 9(b). They identify statements, dates, a signed Contract, an escrow amendment, agency communications, corporate filings and the public use of pregnancy materials, and they explain why each is relevant. (SAC ¶¶ 115–128, 1204–1225, 1250–1263.) Discovery is sought to authenticate and clarify specified internal ownership, authorizations, messages, payment

decisions, hospital instructions and transmission pathways. It is not offered to replace the existing pleading foundation.

*Specific newly published reporting and the alternative amendment request. The September 22, 2026 episode of In the Dark: The Journey, "Intended Parents," reports an interview with former YUDAO Management employee Tina Powers. Powers recounts being interviewed and hired by Xuan for YUDAO at the Arcadia mansion in 2022. Reporter Ava Kofman describes YUDAO offices on the first floor and Mark Surrogacy operating on the second floor. Powers describes a woman from the upstairs surrogacy operation approaching a downstairs coworker, Crystal, about carrying a baby for Mark. (Ava Kofman, The Journey*, Ep. 2, "Intended Parents," Sept. 22, 2026, transcript, statements of Powers and Kofman.) The reporting was released after the SAC was filed; it is not alleged to be already within Dkt. 87 and is not offered as judicially established proof or to cure the SAC by extrinsic evidence on Rule 12. It does provide an identifiable, potentially verifiable basis for further particularized allegations relevant to Xuan's awareness of the surrogacy operation, as distinct from bare business-address overlap. The recruiter is not identified as Xuan; the reporting does not establish that he owned or financed the operative Mark entity, authorized the particular statements made to Plaintiffs, or transmitted their materials to Future Spring. Those propositions remain subject to proof. The reporting bears specifically on futility of amendment if the Court identifies an attribution or knowledge deficiency. Plaintiffs also preserve the opportunity to examine original corporate records and, if permitted, obtain witness testimony and internal communications rather than rely on a reported account as final proof.

Separately, Defendants' request to dismiss five causes against Xuan without leave requires a showing of futility, not merely a present deficiency. Their motion itself cites Lopez v. Smith, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc), for the liberal amendment standard applying with special force to pro se

parties. Plaintiffs maintain the SAC is sufficient and do not elect to amend merely because Defendants demand it. If the Court finds a specific deficiency in a particular count, Plaintiffs ask for leave to plead any additional facts that can properly be alleged, including after the Court identifies the precise shortcoming, rather than a blanket dismissal with prejudice. No unsupported fact is asserted here as a promise of what discovery will show.

An appropriate merits-stage record would include the precise agreements and relationships among Mark Surrogacy LLC, separately registered Mark Surrogacy-named entities, YUDAO and Heavenly Way; the scope of Hernandez's and Cid's authority; the internal communications accompanying the joint compensation and escrow decisions; when Xuan learned of any materially concealed structure; and the actual source, receipt, and authorization of Future Spring's pregnancy materials. (SAC ¶¶ 1258–1263.) These questions are identified with specificity; Plaintiffs do not demand discovery as a right to go fishing for unknown wrongs. The existing SAC must stand or fall on its pleaded factual basis; alternatively, Defendants have not demonstrated that any perceived omission cannot be corrected by factual allegations supported by available records and the newly identified reporting.

## XII. MEET-AND-CONFER DECLARATION AND REMEDIES

The separately filed declaration concerning Local Rule 7-3 reports that a conference took place and the parties did not resolve their disagreements. It is not evidence that the SAC's challenged claims fail. Tronderrica James's contemporaneous notes record counsel's favorable description of the SAC's improvement and a substantive discussion concerning contract provisions, material breach, punitive damages, Future Spring's publication, and a seven-day response extension. Plaintiffs did not concede any cause of action or agree to amend. Counsel's reaction to the publication was expressly conditional, and he denied affiliation with Future Spring; Plaintiffs do not offer it as an admission identifying a transmitter or establishing any Defendant's

responsibility.

The motion seeks dismissal of identified claims, not an independent order striking punitive damages. (Mot. 2, 17.) The SAC pleads punitive relief only as to qualifying tort claims and only upon legally sufficient defendant-specific proof, not solely because a party breached the Contract. (SAC ¶¶ 1264–1271.) No ruling on ultimate punitive entitlement is necessary to decide the requested partial dismissal.

The parties' discussion concerning punitive damages does not transform Dkt. 91 into a motion attacking the amount of damages. The SAC seeks punitive damages only on legally qualifying tort theories, alleges liability on a defendant-specific basis, and disclaims punitive recovery merely for breach of contract. (SAC ¶¶ 1264–1271; Cal. Civ. Code § 3294.) The amount and availability of any ultimate award are not decided on this partial dismissal motion. Similarly, Seyfnia's declaration about the meet-and-confer is a procedural submission, not a factual determination of the underlying tort claims; Plaintiffs' separate declaration distinguishes counsel's conditional reaction to Future Spring from an admission by either Defendant.

## XIII. CONCLUSION

Plaintiffs request denial of Dkt. 91 in its entirety. Alternatively, if the Court finds a claim inadequately pleaded as to a particular moving Defendant, Plaintiffs request that dismissal be without prejudice and with leave to amend under Rule 15 and Lopez. Plaintiffs do not request an inference of tort liability from marriage, a shared address, a contract signature alone, or Future Spring's later publication alone, and do not seek duplicate recovery. The Fourth Cause of Action and the claims Defendants expressly do not challenge should remain unaffected by the ruling.

Dated: September 23, 2026

/s/ Tronderrica James

Tronderrica James, Plaintiff Pro Se

/s/ Travis James

Travis James, Plaintiff Pro Se

**CERTIFICATE OF COMPLIANCE**

The undersigned Plaintiffs, appearing pro se, certify that this memorandum contains 5341 words, including headings and quotations and excluding the caption, tables of contents and authorities, signature block, and this certification, and complies with the 7,000-word limit in C.D. Cal. Local Rule 11-6.1.

Dated: September 23, 2026

/s/ Tronderrica James

Tronderrica James, Plaintiff Pro Se

/s/ Travis James

Travis James, Plaintiff Pro Se